## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SARAH FRIMPONG**
c/o Doumar Martin PLLC
1530 Wilson Blvd., Ste. 1060
Arlington, Virginia 22209

**PLAINTIFF,**

**v.**

**MAUREEN DALY**
1302 South 8th Street
Leesburg, Florida 34748

**-and-**

**MAUREEN A. DALY LIVING TRUST**
Maureen Daly, Trustee
1302 South 8th Street
Leesburg, Florida 34748

**-and-**

**LUKE RORECH**
3163 East Fort King Street
Ocala, Florida 34470

**-and-**

**DOUGLAS RORECH**
1302 South 8th Street
Leesburg, Florida 34748

**-and-**

**MOBILE EATS OF AMERICA, INC.**
Chestnut Business Services, LLC, Registered Agent
311 Park Place Boulevard, Suite 300
Clearwater, Florida 33758

**DEFENDANTS.**

**CASE NUMBER:**

1

## COMPLAINT

Pursuant to Fed. R. Civ. P. 3, Plaintiff Sarah Frimpong respectfully files this Complaint against Defendants Maureen Daly, the Maureen A. Daly Living Trust, Luke Rorech, Douglas Rorech, and Mobile Eats of America, Inc. (collectively, the "Defendants"). In support, Ms. Frimpong states:

## INTRODUCTION

1.      Defendants Maureen Daly, the Daly Trust, and Mobile Eats fabricated their financials to induce Ms. Frimpong to sell her homegrown business, Broodjes & Bier Restaurant Group, LLC ("Broodjes & Bier"). At the time the parties executed the relevant Agreement and Plan of Merger (the "Merger Agreement") and Indemnification Agreement, as of May 1, 2025, Defendants had no intention of honoring their payment obligations on which they have since defaulted. Defendants' misrepresentations were fraudulent from the outset. *See* Ex. A: Merger Agreement and Ex. B: Indemnification Agreement.

2.      Preying on Ms. Frimpong's desire to sell her business for cash and provide for payments to certain lenders, Defendants promised over $1.8 million in payments for the business supported by rosy, but fabricated, financials.

3.      Of the total purchase price, Defendants promised to pay $185,000 on or before May 1, 2025, and approximately $441,829.88 thirty days thereafter. These payments were earmarked for Broodjes & Bier's lenders to whom Ms. Frimpong had personally guaranteed payments (the "Guaranteed Debt"). *See* Ex. A: Merger Agreement at § 5.07. Defendant Daly promised to "remove [Ms. Frimpong] as a personal guarantor of the Guaranteed Debt … or pay off the Guaranteed Debt in full." *Id.*

4.    To further inflate Ms. Frimpong's trust in the transaction and Defendant Daly, Defendant Daly pledged that she would "cause [Defendant Mobile Eats] to distribute to [Defendant Daly] sufficient cash to satisfy [her] payment obligations" and secure any line of credit (using Defendant Daly's assets as collateral, including borrowing against her stock holdings, in an amount to satisfy her payment obligations. *Id.* To bolster Defendant Daly's misrepresentation, Defendant Mobile Eats represented that it had assets of over $54 million, more than enough to cover the Guaranteed Debt. *See* Ex. C:  Financial Disclosures.

5.    The misrepresentations did not end there. To further assure Ms. Frimpong that the transaction was not a sham, Defendant Daly disclosed that she had, through the Defendant Maureen A. Daly Living Trust, private holdings of at least $4 million, business holdings of at least $8 million, book royalties in excess of $100,000, and historical artifacts in excess of $3 million. *Id.*

6.    Defendant Daly also executed an Indemnification Agreement, confirming that her obligation to pay the Guaranteed Debt was "absolute and unconditional and…not subject to any right of set-off, counterclaim, or similar defense." *See* Ex. B: Indemnification Agreement at § 2.

7.    Relying on Ms. Daly's material misrepresentations, Ms. Frimpong executed the transaction documents in good faith. Months later, she has yet to receive any payment, and the Guaranteed Debt, contrary to Ms. Daly's assurances, remains unpaid.

8.    Instead of using the purported millions in her and her affiliates' bank accounts to satisfy the payment obligations under the Merger Agreement, Defendant Daly has used Broodjes & Bier's goodwill and expected cash flow to secure loans to pay herself and family. She made only a $45,000 partial payment toward the Guaranteed Debt to a single lender, and she is now in default on that obligation and owes accruing interest.

3

9.     Defendants' fraud and continuing breach of the Merger Agreement and Indemnification Agreement has concretely injured Ms. Frimpong. She is entitled to compensatory damages of at least $581,829.88, plus interest, punitive damages for Defendants' fraud, and her reasonable attorneys' fees pursuant to § 11 of the Indemnification Agreement.

## PARTIES

10.     Plaintiff Sarah Frimpong ("Ms. Frimpong") is a citizen of the District of Columbia and the seller of Broodjes & Bier.

11.     Defendant Maureen Daly is a citizen of Florida and the purchaser of Broodjes & Bier.

12.     Upon information and belief, Defendant the Maureen A. Daly Living Trust (the "Daly Trust") is a Florida trust and has owned real property in Florida. The Daly Trust misrepresented its financials in the District to induce Ms. Frimpong into selling Broodjes & Bier.

13.     Luke Rorech is a citizen of Florida. In May 2025, he received fraudulent transfers of funds otherwise due to Ms. Frimpong.

14.     Douglas Rorech is a citizen of Florida. In May 2025, he received fraudulent transfers of funds otherwise due to Ms. Frimpong.

15.     Mobile Eats of America Inc. ("Mobile Eats") is Florida corporation. Mobile Eats misrepresented its financials in the District to induce Ms. Frimpong into selling Broodjes & Bier.

16.     Non-party Broodjes & Bier Restaurant Group, LLC ("Broodjes & Bier") is limited liability company in the District of Columbia.

## JURISDICTION AND VENUE

17.     Pursuant to 28 U.S.C. § 1332(a), the Court exercises subject matter jurisdiction over this action because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Pursuant to D.C. Code § 13-423(a)(1), (a)(3), (a)(4), and (a)(6), the Court exercises personal jurisdiction over Defendants Maureen Daly, the Daly Trust, and Mobile Eats because these defendants directed fraudulent misrepresentations and financial disclosures into the District to induce Plaintiff, a District resident, into executing the Merger and Indemnification Agreements, thereby purposefully availing themselves of this forum. Defendants Daly and Mobile Eats also agreed to act as sureties for Ms. Frimpong in connection with the Guaranteed Debt. Defendants Luke and Douglas Rorech received fraudulent payments from Broodjes & Bier, a limited liability company in the District, as part of the scheme with Defendant Daly, which caused injury to Ms. Frimpong in the District and is directly connected to the conduct at issue in this case.

19.     Pursuant to 28 U.S.C. § 1391(b), the Court is the proper venue because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this district.

20.     Defendant Daly also consented to the Court's jurisdiction, and agreed that it was the proper venue, pursuant to § 7 of the Merger Agreement and § 12 of the Indemnification Agreement.

## FACTS

21.     On May 1, 2025, Plaintiff and Defendant Daly executed the Merger Agreement and Indemnification Agreement, whereby Daly acquired Broodjes & Bier.

22.     At this time, Ms. Frimpong had guaranteed approximately $626,829.88 of Broodjes & Bier's debt.

23.    To induce her to enter the transaction, Defendants Daly, the Daly Trust, and Mobile Eats provided her with fabricated financial documents showing substantial assets.

24.    Defendant Daly Trust prepared fabricated documents, in the form of SBA Form 413, with the intention of defrauding Ms. Frimpong. In these documents, Defendant Daly Trust falsely represented that:

      a.    Family Holdings of $4 million

      b.    a Hollywood Textile Collection of over $650,000

      c.    Historical Artifacts, including Gold and Paper Currency from the RMS Titanic, of over $3 million

      d.    Businesses valued, according to GAAP principles, at over $8 million

      e.    Intellectual property rights of over $100,000; and

      f.    Book royalties of over $100,000

      *See* Ex. C: Financial Disclosures.

25.    Likewise, Defendant Mobile Eats prepared fabricated documents, in the form of a balance sheet, with the intention of defrauding Ms. Frimpong. In the balance sheet, Defendant Mobile Eats misrepresented that it had assets of over $50 million.

26.    Defendant Daly, knowing Defendant Daly Trust and Mobile Eats' documents were fraudulent, transmitted them to Ms. Frimpong on or around April 8 and 24, 2025, respectively, with the intention of deceiving her into believing that Defendant Daly had more than enough assets to pay the Guaranteed Debt.

27.    Together with multiple verbal and written reassurances that Defendant Daly and her affiliates presently had the money to purchase Broodjes & Bier, Ms. Frimpong reasonably relied on the fabricated financial documents before entering the transaction. Defendants'

purportedly strong financial health, specifically the representations concerning assets on hand before the Merger Agreement and Indemnification Agreement were signed, were material consideration for Ms. Frimpong to enter the transaction.

28.    However, once the Merger Agreement and Indemnification Agreement were signed, Defendant Daly's scheme quickly unraveled.

29.    A core term of the Merger Agreement required Defendant Daly to either (i) remove Ms. Frimpong as a personal guarantor on Broodjes & Bier's $626,829.88 in Guaranteed Debt within thirty (30) days of closing, or (ii) pay off the Guaranteed Debt in full. *See* Ex. A: Merger Agreement § 5.07(a). This obligation was of paramount importance, as Ms. Frimpong remained personally liable to creditors despite having relinquished ownership of the company.

30.    To facilitate compliance with this obligation, Defendant Daly further agreed to use her best efforts to convince the creditors of her superior creditworthiness and to provide any financial information they requested. She also agreed to consummate a pending SBA loan for Mobile Eats of America, Inc., to cause Mobile Eats to distribute sufficient funds to her to satisfy the payment obligations, and to secure any necessary line of credit using her own assets, including borrowing against her stock holdings. *Id.*

31.    Defendant Daly further agreed to cooperate fully and report on her progress in satisfying her obligations. *Id.* at  §§ 5.07(c)–(d).

32.    Yet, despite these unambiguous duties, Defendants Daly and Mobile Eats have failed to satisfy the Guaranteed Debt (aside from an initial payment for a debt that is again in default and accruing interest) failed to remove Ms. Frimpong as guarantor, failed to secure financing, and failed to direct any payment from Mobile Eats. To the contrary, they have concealed their noncompliance, refused to provide regular status updates, and left Ms. Frimpong personally

7

exposed. Defendants' failure to perform, coupled with the fraudulent inducement preceding the transaction, confirms that Defendant Daly never intended to fulfill her obligations under the Merger Agreement.

33.    Instead of making her "best efforts," as required by the Merger Agreement to satisfy the Guaranteed Debt, Defendant Daly chose a different path.

34.    As just one example, in mid-May 2025, Defendant Daly paid her sons, Luke Rorech and Douglas Rorech, approximately $12,500 from Broodjes & Bier for purported loan repayments. This money was supposed to be used to pay the Guaranteed Debt, not be diverted to family members or personal use.

35.    Defendant Daly also diverted company funds for personal expenses, including purchases at grocery stores, restaurants, and furniture stores (approximately $8,000), payments of property assessment fees to the state for her personal property, and various cash withdrawals.

36.    Also, upon information and belief, on or around June 8, 2025, Defendant Daly obtained approximately $72,000 in business funding, allegedly for the benefit of the company or to support loan repayment obligations. Upon information and belief, these funds were instead used to pay herself and her family members.

37.    Further confirming the family's fraudulent enterprise, on June 9, 2025, Luke Rorech told Ms. Frimpong that he was "in charge of processing payments" for his mother. And of course this "processing" has not resulted in the contractual payments due for the Guaranteed Debt. Even basic credit card bills and straightforward vendor debts have been left unpaid by Defendants.

38.    Ms. Frimpong has made multiple good faith efforts to obtain compliance and transparency from Defendant Daly. On June 25, 2025, her counsel submitted a formal Request for Information pursuant to § 5.07(d) of the Merger Agreement. The letter sought updates on Ms.

Daly's efforts to remove Ms. Frimpong as guarantor, payments made toward the Guaranteed Debt, any creditor communications, and a general accounting of funds received and disbursed since the transaction closed.

39.     When Defendant Daly failed to provide the required disclosures, Ms. Frimpong sent a second demand. On July 17, 2025, her counsel issued a formal Request for Payment, demanding (i) the $185,000 that was due at closing, (ii) a good faith payment toward the remaining Guaranteed Debt, and (iii) an itemized accounting of how post-closing company funds were used.

40.     Again, Defendant Daly did not comply. To date, Defendant Daly has failed to pay the Guaranteed Debt, failed to indemnify or defend Ms. Frimpong, and failed to inform Ms. Frimpong of progress with lenders. Her evasiveness as to her efforts with lenders, despite multiple contractual obligations to report and cooperate, further confirms her intent to defraud Ms. Frimpong and evade liability under the agreements.

41.     As a direct result of Defendant Daly's fraud and subsequent nonperformance, Ms. Frimpong remains personally liable on over $581,829.88 in Guaranteed Debt and has already received threats and inquiries from creditors seeking payment. Under the Indemnification Agreement, Defendant Daly's obligation to indemnify, defend, and hold Ms. Frimpong harmless is "absolute and unconditional" and not subject to any right of set-off, counterclaim, or other defense. *See* Ex. B: Indemnification Agreement § 2. Yet Daly has failed to provide any defense, has not paid a single creditor, and has refused to even disclose which lenders, if any, she has contacted regarding Ms. Frimpong's release from personal liability. Her continued evasiveness and nonperformance leave Ms. Frimpong exposed to litigation, credit damage, and financial harm.

## FIRST CLAIM FOR RELIEF

Breach of Contract
(Merger Agreement- Defendant Daly)

42.     Ms. Frimpong incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

43.     On May 1, 2025, Ms. Frimpong and Defendant Maureen Daly entered into the Merger Agreement and a related Indemnification Agreement, which imposed specific, material obligations on Defendant Daly.

44.     Under § 5.07 of the Merger Agreement, Defendant Daly agreed to remove Ms. Frimpong as personal guarantor of approximately $626,829.88 in Guaranteed Debt or pay off such debt within 30 days of the closing date.

45.     Defendant Daly further agreed to act in good faith and use her best efforts to satisfy this obligation, including by leveraging her financial assets and corporate control over Mobile Eats of America, Inc. to secure the required funds. She also agreed to provide status updates and respond to reasonable requests for information.

46.     Defendant Daly materially breached these obligations by failing to remove Plaintiff as guarantor, failing to pay the Guaranteed Debt, except an initial $45,000 payment, failing to secure alternative financing, and failing to respond to Plaintiff's formal demands for payment and information.

47.     As a direct and proximate result of Defendant Daly's breach, Plaintiff remains liable on the Guaranteed Debt and has suffered significant financial harm, reputational injury, and exposure to creditor actions.

48.    Plaintiff is entitled to compensatory damages in an amount not less than $581,829.88, plus interest, attorneys' fees, and costs as permitted under § 11 of the Indemnification Agreement.

## SECOND CLAIM FOR RELIEF

Fraudulent Inducement
(Defendants Daly, Daly Trust, and Mobile Eats)

49.    Ms. Frimpong incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

50.    To induce Ms. Frimpong into executing the Merger and Indemnification Agreements, Defendants Daly, the Daly Trust, and Mobile Eats knowingly provided false and misleading financial disclosures, including fabricated SBA forms and balance sheets falsely purporting to show assets exceeding $50 million.

51.    Defendant Daly further made repeated verbal and written representations, such as an April 24, 2025 email, before execution of the contracts that she had both the intent and financial capacity to satisfy the obligations under the Merger Agreement, knowing at the time that such representations were false.

52.    Defendants made these misrepresentations intentionally and with the specific purpose of inducing Ms. Frimpong to sell her business and remain personally liable on significant debt.

53.    Ms. Frimpong reasonably relied on these misrepresentations, which were material to her decision to enter the transaction, and did so to her detriment.

54.    Had Ms. Frimpong known the true financial condition of the Defendants or their intent not to fulfill their obligations, she would not have agreed to the sale or remained personally liable for the Guaranteed Debt.

55.    As a direct and proximate result of Defendants' fraudulent inducement, Ms. Frimpong has suffered damages in excess of $581,829.88, and is entitled to compensatory and punitive damages, along with attorneys' fees.

### THIRD CLAIM FOR RELIEF

Fraudulent Conveyance
(Defendants Daly, Luke Rorech, Douglas Rorech)

56.    Ms. Frimpong incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

57.    At the time Defendant Daly owed contractual payment obligations for the Guaranteed Debt, she transferred funds from Broodjes & Bier to her sons, Defendants Luke and Douglas Rorech, in purported "loan repayments" totaling at least $12,500.

58.    Upon information and belief, Defendant Daly subsequently received approximately $72,000 in additional business funding, which she diverted for personal or family use rather than paying Ms. Frimpong or satisfying the Guaranteed Debt.

59.    These transfers were made with actual intent to hinder, delay, or defraud Ms. Frimpong, a known creditor, and Broodjes & Bier's known creditors, and without receipt of reasonably equivalent value in exchange.

60.    The transfers occurred shortly after the Merger Agreement closed, when Defendant Daly had no intention of performing and knew that Ms. Frimpong remained liable for the Guaranteed Debt.

61.    Under D.C. Code §§ 28-3101, *et seq.*, these transfers are voidable, and Ms. Frimpong is entitled to judgment against the transferees for the amounts received and recovery of the transferred assets.

## **FOURTH CLAIM FOR RELIEF**

Civil Conspiracy
(Defendants Daly, Luke Rorech, Douglas Rorech)

62.     Ms. Frimpong incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

63.     Defendants Maureen Daly, Luke Rorech, and Douglas Rorech coordinated and conspired to divert funds that were required to satisfy the Guaranteed Debt.

64.     In furtherance of the conspiracy, Defendant Daly transferred at least $12,500 in company funds to Luke and Douglas Rorech as purported "loan repayments." Upon information and belief, she also diverted an additional $72,000 in post-closing funding for personal and familial use.

65.     These transfers were made without reasonably equivalent value and with actual intent to hinder, delay, or defraud Ms. Frimpong, a known creditor.

66.     Each transfer was an overt act performed in furtherance of the conspiracy to commit a fraudulent conveyance.

67.     As a direct and proximate result of the conspiracy, Ms. Frimpong has suffered injury, including the loss of funds earmarked for the Guaranteed Debt, continued personal liability to creditors, and reputational harm.

68.     Defendants Daly, Luke Rorech, and Douglas Rorech are jointly and severally liable for all damages resulting from their conspiracy.

## FIFTH CLAIM FOR RELIEF

Civil Conspiracy
(Defendants Daly Trust and Mobile Eats )

69.    Ms. Frimpong incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

70.    Defendants the Daly Living Trust and Mobile Eats coordinated and conspired to induce Ms. Frimpong into selling her company through materially false financial representations.

71.    In furtherance of this scheme, the Daly Trust fabricated SBA forms purporting to show assets exceeding $15 million, and Mobile Eats prepared a balance sheet falsely representing assets exceeding $50 million.

72.    These coordinated misrepresentations were material, intentionally misleading, and designed to induce Ms. Frimpong to enter into the Merger and Indemnification Agreements.

73.    Ms. Frimpong reasonably relied on these misrepresentations and would not have agreed to the transaction or remained personally liable for Broodjes & Bier's debt had she known the truth.

74.    Each false document and misrepresentation constituted an overt act performed in furtherance of the conspiracy to commit fraudulent inducement.

75.    As a direct and proximate result, Ms. Frimpong has suffered damages exceeding $581,829.88, as well as reputational injury and ongoing creditor exposure.

76.    Defendants the Daly Trust, and Mobile Eats are jointly and severally liable for all damages arising from their conspiracy.

## <u>SIXTH CLAIM FOR RELIEF</u>

Breach of Contract
(Indemnification Agreement- Defendant Daly)

77.    Ms. Frimpong incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

78.    On May 1, 2025, Ms. Frimpong and Defendant Maureen Daly entered into the Merger Agreement and a related Indemnification Agreement, which imposed specific, material obligations on Defendant Daly.

79.    Pursuant to § 2 of the Merger Agreement, Defendant Daly agreed to indemnify, defend, and hold harmless Ms. Frimpong against liabilities and affirmed that "this obligation is absolute and unconditional and is not subject to any right of set-off, counterclaim, or similar defense."

80.    Multiple lenders have contacted Ms. Frimpong for payment in connection with personally guaranteed debt that is the responsibility of Defendant Daly.

81.    As just one example, on or around July 11, 2025, Washington Lamb, Inc. commenced proceedings to recover alleged amounts due from Broodjes & Bier Restaurant Group, LLC, and have named Ms. Frimpong, individually, as a defendant.

82.    Defendant Daly's failure to perform her obligations has caused Ms. Frimpong to incur damages, including potential liability for Guaranteed Debt, legal expenses, and reputational harm.

83.    Accordingly, Defendant Daly is liable to Ms. Frimpong for breach of contract and is responsible for all damages sustained by Ms. Frimpong from demands or claims by lenders, including reasonable attorneys' fees and other expenses suffered in connection with those demands

and claims pursuant to § 4 of the Indemnification Agreement, and reasonable attorneys' fees and costs for this action pursuant to § 11 of the Indemnification Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sarah Frimpong respectfully requests that this Court enter judgment in her favor and against Defendants Maureen Daly, the Maureen A. Daly Living Trust, Luke Rorech, Douglas Rorech, and Mobile Eats of America, Inc., and award the following relief:

a. Compensatory damages in an amount not less than $581,829.88, plus accrued interest, or such other amount as may be proven at trial;

b. Punitive damages for Defendants' fraudulent conduct and civil conspiracy, in an amount not less than $1,800,000;

c. Equitable relief, including imposition of a constructive trust over fraudulent transfers under D.C. Code § 28-3101 *et seq.*, and a constructive trust over all SBA funds received by Defendant Mobile Eats of America, Inc.;

d. Attorneys' fees and costs, including those available under § 11 of the Indemnification Agreement and as otherwise permitted by law;

e. Prejudgment and post-judgment interest as permitted by law; and

f. Such other and further relief as the Court deems just and proper.

Dated: August 20, 2025                    Respectfully Submitted,

**Sarah Frimpong**

By Counsel


/s/ George R.A. Doumar
George R.A. Doumar, D.C. Bar No. 415446
Raj H. Patel, D.C. Bar No. 240973
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: (703) 243-3737
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

17